# The Pottsville Water Co., Appellant, *v.* The Public Service Commission et al. (No. 1).

*Public Service Company Law—Water companies—Public Service Commission—Rules and regulations—Special charter—Service pipes.*

The reasonableness of a rule regulating the maintenance and repair of a facility in the public highway, through which service

is furnished by a public service company to its patrons, is peculiarly within the jurisdiction of the Public Service Commission.

An order of the Public Service Commission requiring a water company to maintain service pipes to the curb line is reasonable and in conformity with law.

The fact that a water company, chartered by special act of the legislature, is authorized by the act of its incorporation to adopt such by-laws, rules and regulations as shall not contravene the Constitution and laws of the United States or of the Commonwealth, does not authorize it to enforce rules and regulations contrary to the expressed policy and rules of the Public Service Commission.

When the legislature passed the Public Service Company Law, and in pursuance thereof the Public Service Commission declared its policy, with reference to the laying, maintenance, and repair of service pipes of water companies, its order, provided it was reasonable and in conformity with law, became the law of the Commonwealth, and any by-laws in conflict therewith were necessarily abrogated, and no longer enforceable.

*Public Service Company Law—Public Service Commission—Questions of law.*

While the Public Service Commission is not a court, but an administrative body, it is, neverthless, frequently called upon to consider matters of law which arise in connection with the determination of the subjects committed to it. Its jurisdiction, in matters committed by law to its charge, is not lost by reason of the fact that the commission may have to pass upon questions of law in arriving at its conclusion.

Argued October 3, 1921. Appeal, No. 217, Oct. T., 1921, by The Pottsville Water Company, from order of Public Service Commission, Complaint Docket, No. 4256 of 1921, sustaining complaint in the case of Joseph Lundy v. The Pottsville Water Company. Before OR-LADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Complaint by Joseph Lundy against rules and regulations of The Pottsville Water Company requiring consumer to pay for repairs to service pipes between the mains and the curb line under the public streets, and

against action of the company in shutting off the water of consumer who refused to make such repairs.

The facts are stated in the opinion of the Superior Court.

The Public Service Commission sustained the complaint, and ordered The Pottsville Water Company to repair the leaks in service pipes within two days, and forthwith upon completion of such repairs to restore service to the complainant. From this order the Pottsville Water Company appealed.

*Errors assigned* were the order of the commission, the finding by the commission that the question was wholly one of law, and the allowance of but two days to complete the repairs.

*George M. Roads,* and with him *P. B. Roads,* for appellant.—The pleadings raised a question of fact, as to ownership of the service lines, which the commission did not decide. The service pipes are not general facilities of the company: Leavenworth v. Leavenworth, etc., Water Co. (Kansas), P. U. R. 1915 B, 611; Joplin v. Wheeler, 173 Mo. App. 590; Fisher v. St. Joseph Water Co., 151 Mo. App. 530; Warren v. City of Chicago, 118 Ill. 329.

Appellant company, under its special charter, is under no obligation to deliver water beyond its own mains, and to require it to deliver water at the curb is an impairment of its charter rights: Hays v. Com., 82 Pa. 518; Penn'a R. R. Co. v. Duncan, 111 Pa. 352.

The exercise of police powers of the State must be reasonable. Not only must the end sought to be attained be within the scope of the powers, but the means used must bear some fair relation to that end: Holden v. Hardy, 169 U. S. 366; Yick Wo v. Hopkins, 118 U. S. 356; L. S. & M. S. Ry. Co. v. Ohio, 173 U. S. 285; A. C. L. R. R. Co. v. N. C. Corporation Commission, 206 U. S. 1.

*Frank M. Hunter*, and with him *John Fox Weiss*, for Public Service Commission.—A charter must be construed liberally as to the public, and strictly as to the grantee: P. & L. E. R. R. Co. v. Bruce, 102 Pa. 23; 197 Pa. 80; Edgewood Boro. v. Scott, 29 Pa. Superior Ct. 156.

A special charter is subject to the police power: Penn'a R. R. Co. v. Ewing, 241 Pa. 581; Coyle v. Smith, 221 U. S. 559; Glen Rock Motor Club v. York & Md. Line Tpk. Co., 64 Pa. Superior Ct. 147; Slate Belt Ry. Co. v. P. S. C., 73 Pa. Superior Ct. 493.

The commission had jurisdiction: Fogelsville & Trexlertown Electric Co. v. Penn'a Power & Light Co., 271 Pa. 237.

OPINION BY KELLER, J., December 15, 1921:

Joseph Lundy, a resident householder of the Borough of St. Clair, and a patron of the Pottsville Water Company, filed complaint with the Public Service Commission against said water company alleging that it had turned off the water supply to his house at the main in the street because he had refused to repair, or pay the expense of repairing, a leak in the service pipe leading to his house at a point in the roadway between the main and the curb, and praying that an order be made directing respondent company forthwith to supply him with water. This action of the water company followed a complaint previously filed with the commission by the Borough of St. Clair that the company had permitted leaks in the service pipes between the main pipe and the stop cocks in the pavement or sidewalk to go unrepaired for upwards of two months causing a public nuisance.

The water company filed an answer averring that the said service pipe was the property of the complainant; that it had been installed and paid for over twenty-five years ago by his predecessor in title, pursuant to a by-law of the company requiring service pipes to be maintained in good order by the applicant for service and

authorizing the company to shut off the water for failure so to do on notice, which notice it was averred had been duly given.

The Public Service Commission being of the opinion that under the facts as presented in the complaint and answer the question thus raised was ruled by the decision of this court in Panther Valley Water Co. v. P. S. C., 70 Pa. Superior Ct. 8, ordered the respondent company to repair the leaks referred to in the complaint within two days from the date of service of said order and upon completion of such repairs forthwith to restore to the complainant the service theretofore discontinued. The water company appealed.

In the Panther Valley Water Company case, supra, this court affirmed an order of the Public Service Commission holding that a rule of a water company which required consumers to pay the cost of installing and maintaining the service pipes from the main to the curb line was unreasonable and could not be allowed to stand. The reasons justifying the conclusion are clearly stated in the opinion of Judge KEPHART: "The utility company, not the consumer, has the right to open and occupy the street. Pipes laid in the cartway should be the property of the utility that there might be no questions as to the responsibility in case of lack of proper care and attention to such service lines. The mains are usually laid on one side of the cartway, and if the consumer was to pay for the service line from the main to the property line, the consumer nearest the main would have a decided advantage as to charge over the consumer on the opposite side of the street." Furthermore it is essential that connections with its mains should be under the sole care and control of the water company; no one would complain more loudly, and with more right, than it if it were otherwise and consumers attempted to make such connections and lay service pipes in accordance with their own individual ideas and plans. The necessity for a clear fixing of such responsibility is shown by this

very case where for over two months a public nuisance existed because of a dispute as to whose duty it was to repair this leak.

Appellant seeks to escape the force of the Panther Valley Water Company decision by averring that under the terms of its charter (1) it is not required to deliver water further than to its mains; (2) it is authorized to adopt such by-laws, rules and regulations as shall not contravene the Constitution and laws of the United States or of this Commonwealth and may be necessary or expedient for the well governing of its affairs, and that in pursuance thereof it had adopted a by-law requiring the consumer to maintain the service lines in good order, etc. It also urges (3) that the service pipe to be repaired was not its property and (4) that the question before the commission was a judicial and not an administrative one and that it was therefore without jurisdiction to make the order.

It would seem that the reasonableness of a rule regulating the maintenance and repair of a facility in the public highway through which service was furnished by a public service company to its patrons was peculiarly within the jurisdiction of the Public Service Commission: Rochester B. & L. Assn. v. Beaver Valley Water Co., 68 Pa. Superior Ct. 122, pp. 126-7; Tyrone Gas & Water Co. v. P. S. C., 77 Pa. Superior Ct. 292, p. 297. The definitions of "facility" and "service" as given in article I, section 1, of the Public Service Company Law are certainly broad enough to cover these service pipes and the supply of water in them; article V, section 1, gives to the commission power and authority to inquire into and regulate the service of all public service companies and the making of repairs in and to such service; and by article V, section 2, the commission is expressly authorized to determine and specify the just, reasonable, safe, adequate and sufficient service, facilities, rules, regulations or practices to be put in force, observed, rendered, used or furnished in the performance of their

public service duties by public service companies; and it is made the duty of public service companies to observe and obey said orders, and all and every the mandates and requirements thereof.  In the Panther Valley Water Company case this court distinctly ruled that the commission had authority to pass upon the reasonableness of such a rule.  And such jurisdiction is not lost by reason of the fact that the commission may have to pass upon questions of law in arriving at its conclusion. While it is not a court but an administrative body it is nevertheless frequently called upon to consider matters of law which arise in connection with the determination of the subjects committed to it, such as the regulation of rates, service, facilities, etc., of public service companies. For that reason it is provided that the attorney general of the Commonwealth shall be ex officio the general counsel of the commission and that he shall appoint attorneys for their counsel and assistance [article IV, section 6].  "Certain matters before the Public Service Commission must assume a legal aspect, as appears from the act": Coplay Cement Co. v. P. S. C., 271 Pa. 58, p. 65.  The commission has frequently been called upon in its regulation of the rates and service of public service companies to decide preliminarily whether the action proposed is unlawful as contrary to statute or violative of any constitutional provisions: see Relief Electric Light, Heat & Power Co.'s Petition, 63 Pa. Superior Ct. 1; Glen Rock Motor Co. v. York & Maryland Line Turnpike Co., 64 Pa. Superior Ct. 147; McKeesport v. Pittsburgh Rys. Co., 72 Pa. Superior Ct. 435; Lansdowne Boro. v. P. S. C., 74 Pa. Superior Ct. 203; Scranton v. P. S. C., 268 Pa. 192.  The legal rights of the parties are sufficiently safeguarded by provisions for appeal to this court and the Supreme Court.

Taking up, then, the contention of the appellant that under its charter it cannot be required to deliver water beyond its mains we find that it was incorporated under Act of Assembly of April 11, 1834, P. L. 274, with ad-

ditional powers granted by the supplement of February 18, 1854, P. L. 79. The former act makes it the duty of the company to bring and convey into the Borough of Pottsville, by means of pipes, trunks, aqueducts or other means water from some spring or stream within the borough or from the neighborhood thereof and gives it authority at all times to dig and lay pipes or trunks along the streets and alleys and public grounds within said borough and to renew and repair the same, shutting up and amending any breaks which it may make as soon as possible; provided the company shall first obtain permission of the constituted authorities of the said borough (section 7). It is required in section 8, to erect hydrants in such streets or parts of the borough where pipes shall have been laid, to be used solely for the extinguishment of fires; "and they [the managers of the company] shall suffer individuals at all times to be supplied with water from said pipes, for domestic or manufacturing use, for such reasonable compensation as shall from time to time be agreed upon by the said managers and such individuals, according to such uniform rates which the said president and managers shall hereafter adopt, having regard to the probable quantity of water which applicants are likely to consume, and to their distance from the place wherever the water is to be drawn." By the supplement of February 18, 1854, P. L. 79, the said water company was authorized to bring into the Borough of Pottsville a sufficient supply of fresh and pure water from Mill Creek or any of its branches by means of pipes or trunks or in any other way and to construct reservoirs for the reception thereof and to connect the same with their pipes now laid in said borough and lay such other pipes therefrom as they shall deem proper (section 4); and by section 7 it was provided that the said company shall at all times have the liberty and privilege to dig ditches or trenches and to lay pipes or trunks in, across and along all public roads, highways and streets, and to alter, repair and renew the same as

often as they may find necessary, shutting up and amending any breaches that they may make as soon as possible; by section 8 the said company was authorized to supply with water the inhabitants of the Boroughs of St. Clair and Port Carbon, and of the towns of Palo Alto and Mt. Carbon for all domestic and manufacturing purposes, and for that purpose to have all the rights, powers and privileges as to entering upon lands and enclosures and laying down pipes in streets, roads and highways, and of erecting hydrants or fireplugs within the said boroughs, towns and limits "as is hereinbefore conferred or is conferred by the act to which this is a supplement in relation to the Borough of Pottsville, and of contracting with the said inhabitants or any companies for the use of said water within the limits aforesaid."

We see nothing in these acts which limits the obligation of the appellant company to conducting a supply of water through the main pipes laid in the streets of the several boroughs or prevents the Commonwealth under its police powers from requiring the water company to build or to maintain and repair service pipes leading from such mains to the curb lines. The obligation of the water company is "to suffer individuals at all times to be supplied with water from such pipes for domestic or manufacturing use," not to permit individuals to make connections in the streets with its trunks or mains. As before pointed out, it is the company, not its patrons or consumers, which is given authority to lay pipes in the streets and alleys within the said boroughs and to renew and repair the same. The provision in the act specially relied upon by the appellant company, namely, that it may adopt uniform rates "having regard to the probable quantity of water which applicants are likely to consume and to the distance from the place wherever the water is to be drawn" does not help its contention. This clause evidently refers to the distance of the pipes or trunks from the source of supply and not to the service pipes leading from the main pipes. If it were other-

wise, and the act contemplated that the consumers were to lay and pay for their own service pipes from the main to the curb line, what possible difference could it make to the company what distance the service pipes had to be thus laid? It could only affect the company provided it and not the consumer was to bear the expense of their laying and maintenance.

Nor are we forced to a different conclusion by reason of the fact that the Act of 1834, supra, authorizes the company to adopt such by-laws, rules and regulations as shall not contravene the Constitution and laws of the United States or of this Commonwealth. This provision was only declaratory of the law that the by-laws of a corporation must not be repugnant to the Constitution and laws of the United States and the Constitution and laws of this Commonwealth: German General Beneficial Assn. of Phila., 30 Pa. 155. It is retained in the general corporation Act of April 29, 1874, P. L. 73, section 1, paragraph 6, and section 5, and its Amendment of May 14, 1891, P. L. 61, page 62. The same provision is therefore impliedly written into the charter of every corporation created under the general law of this Commonwealth and was, in consequence, present in the charter of the Panther Valley Water Company when that case was before this court. Such a provision refers to the laws as they shall from time to time exist, and the act establishing the Public Service Commission and orders made by that commission in pursuance thereof are within the description: Puget Sound Traction Co. v. Reynolds, 244 U. S. 575. In that case the ordinance granting the utility company the right to use the city streets provided that it should have the right at any and all times to make reasonable rules and regulations for its management and operation "provided that such rules and regulations shall not conflict with the laws of the State of Washington and the charter and ordinance of the city." The Supreme Court of the United States in passing on this clause said: "The proviso that the 'rules-

shall not conflict with the laws of the State,' etc., by fair construction means the laws as they shall from time to time exist. The act establishing the Public Service Commission (Laws 1911, C. 117), and orders made by that commission are within the description; hence, the contract, if it be a contract, was subject to, and is not impaired by the order in question."

At the time the act authorizing the incorporation of the water company was passed, this Commonwealth had not declared its policy as to who should lay and maintain or pay for the expense of repairing service pipes leading from the main pipe to the curb line. Any rule or by-law adopted by the company with reference thereto which was not unreasonable was, therefore, not in contravention of the laws of this Commonwealth as they then existed. When, however, the legislature passed the Public Service Company Law and in pursuance thereof the Public Service Commission declared its policy with reference to the laying and the maintenance and repair of such lines, its order, provided it was reasonable and in conformity with law, became the law of the Commonwealth and any by-laws, rules or regulations of water companies in conflict therewith were necessarily abrogated and no longer enforceable. The Public Service Commission has declared it to be its policy that such service pipes between the main and the curb line should be laid and maintained and kept in order by the utility company, and this court has declared such an order to be reasonable and in conformity with law. It, therefore, applies to the appellant company and any rule or by-law adopted by it in conflict therewith was thereby abrogated and rendered of no force and effect.

It is of no moment that these service pipes may have been originally laid by or at the expense of the consumers and are not the property of the water company for rate making purposes: Beaver Valley Water Co. v. P. S. C., 76 Pa. Superior Ct. 255, p. 264. Apart from their connection with the company's mains, they are of no

practical value and in so far as the company is required by this order of the commission to replace or renew these service lines, it is a capital charge for which it is entitled to consideration on any valuation of its property. The order of the commission simply holds that it is for the best interests of the public that the company which has the right to open the streets and lay pipes for the supply of water to the public should have control of the connections and service pipes from the mains to the curb line and should be responsible for their repair and maintenance in good order.

The order of the Public Service Commission is affirmed and the appeal is dismissed at the costs of the appellant.

